Somerset Realty · Company
vs.                    No. 77831.
Morris Shapiro et al.

November 3, 1930.

CARPENTER, J: This action was brought by the Somerset Realty Company, a corporation organized under the laws of the State of Rhode Island, against Morris Shapiro and Jacob Shapiro, both of New York in the State of New York, co-partners doing business under the name of M. Shapiro and Son, to recover damages to a building owned by the Somerset Realty Company, located on the southeasterly corner of Richmond Street and Weybosset Street in the City of Providence.

The case was tried before a jury in this Court in April, 1930, at which trial a jury returned a verdict for the plaintiff and assessed damages in the sum of $5,579.70. The defendants in due time filed a motion for a new trial which was argued before this Court in June, 1930. The motion for a new trial alleged the usual grounds.

It appeared from the evidence that the plaintiff was the owner of a three-story brick and wooden building located on the southeasterly corner of Richmond and Weybosset Streets in the City of Providence; that the defendants were engaged as general contractors by Loew's Theatre and Realty Corporation, a Delaware corporation doing business in Providence, to erect the Loew State Theatre, so-called, on a lot of land adjoining the land of the plaintiff on which the building of the plaintiff stands on the easterly side; that while the defendants were excavating for and while building the foundation for said theatre building, and by reason of the manner of said excavating for and building of said foundation, the building of said plaintiff settled, causing damage to said plaintiff's building.

The plaintiff produced many witnesses to prove that the damage was caused by the defendants in a manner which would make the defendants liable for the damage. It also produced many witnesses who testified as to the extent of the damage.

The defendants produced many witnesses to prove that the damage to the building was not caused by any act which would make them legally responsible and liable for the damage. They, the defendants, also produced witnesses as to the extent of the damage.

The case occupied the attention of this Court for six days in the trial, and, therefore, it may well be seen that the evidence was both voluminous and contradictory and, therefore, it does not seem necessary at this time to point out or quote any particular parts of the evidence.

This Court after considering all the evidence in the case is not satisfied that substantial justice has been done and feels that the case should be tried again.

Motion for new trial granted.

For plaintiff: Edwards & Angell.

For defendants: Philip C. Joslin, James Harris and Louis V. Jackvony.

Catherine H. Conley
et als.
vs.                    Eq. No. 10137.
Charles S. Horton et al.

Mary H. Conley
vs.                    Eq. No. 10138.
Charles S. Horton et al.

November 6, 1930.

BLODGETT, P. J. Both cases heard upon bill, answer and proof.

Actions were brought to have certain deeds of mortgage given by the respective complainants to respondents de-

clared void and cancelled by reason of force and duress on part of respondents in procuring execution of the same and delivery to them.

A brother of complainants had made collection of a large amount of money belonging to respondents, while acting as agent for them, and failed to pay same over. Immediately upon discovery on the part of respondents of this defalcation, they called upon one of complainants and, after stating the purpose of the call, viz.: to acquaint the sister of her brother's defalcation, requested her to give to them deeds of mortgage upon certain real estate belonging to said complainants.

The evidence is conflicting as to the means used by respondents to obtain execution of the deeds. Catherine, one of the sisters, after the visit of respondents, called upon Louis H. Monast, a real estate dealer, and stating to him that respondents had told her that they would not prosecute her brother for embezzlement if the sisters executed the deeds in question, asked for his advice as to what course she should pursue. This Monast declined to do, saying he could not advise them, that they must determine that for themselves, but that respondents had declared to him their intention to begin action against their brother unless some settlement were made.

The sisters are elderly and unmarried, the youngest 65, the oldest 72. They testified to a visit of respondents at which threats of prosecution of their brother for embezzlement were made by Mr. and Mrs. Horton unless they consented to execute the mortgages.

Mr. Horton denied using any threats of such a nature. Mrs. Horton is now deceased and cannot testify.

There is no question as to the proper execution of the mortgages by complainants and their acknowledgment of the same. They had no attorney to advise them in the premises and sought no legal advice. The great weight of

authority is that any exercise of duress, by threats or oppression, upon the person executing a deed, renders such deed invalid.

"When a son had been guilty of embezzlement, and his mother made a note and executed a mortgage to the employer from whom he had embezzled, and the Court was satisfied that the mother's controlling motive was to protect her son from exposure and prosecution: Held, that she was not a free agent, and that the note and mortgage should be annulled and cancelled."

*Mary Foley* vs. *Wm. H. Greene et al.*, 14 R. I. 618. See also 32 A. L. R. 425 n.

Each case of this nature must be decided upon its particular circumstances.

Here were three elderly women. Their brother was a defaulter and liable to prosecution. Respondents, naturally indignant at having been robbed of a large amount of money, immediately upon discovery of the loss, called upon one of the complainants and laid the matter before her, requesting her to execute a mortgage and note, and to see her sisters and arrange for the execution by them of a note and mortgage of certain real estate belonging to them. Within the period of a few days the notes and mortgages were executed by them, and on the day following such execution a transfer of insurance was given respondents.

There was testimony by complainants of threats of prosecution of their brother by respondents, in the case of the wife of Horton not denied, she having died since the execution of such mortgages.

The Court is inclined to believe that at the time of the signing of the notes and execution of the mortgages, in light of the indignation of the respondents and the age of the complainants, that undue pressure was brought to bear upon them, and that the controlling motive of the sisters was to protect

their brother from exposure and prosecution, and that they were not free agents.

The prayers of the bill are sustained and decrees to that effect may be entered.

For complainants: Thomas P. Corcoran, Charles E. Mangan.

For respondents: John A. Tillinghast.